## LOWRY *v.* THE STATE.

'There was no such assignment of error upon the rulings of the court in admitting evidence as would authorize this court to consider the questions relating thereto which were argued here. There was no error in excluding evidence. The charge of the court was a full and fair instruction to the jury. The verdict is supported by the evidence, and the discretion of the trial judge in refusing a new trial will not be controlled.

Submitted March 1,—Decided March 22, 1897.

Indictment for murder. Before Judge Sweat. Glynn superior court. December term, 1896.

*George B. Mabry,* for plaintiff in error.

*J. M. Terrell, attorney-general, J. W. Bennett, solicitor-general,* and *Toomer & Reynolds,* contra.

ATKINSON, Justice.

Lowry, the accused, was indicted for the offense of the murder of one Patrick Burns. His trial resulted in a verdict of guilty; and his motion for new trial having been overruled, he excepted.

A number of exceptions were taken to the admission of evidence by the court, but there was no such assignment of error upon any of the rulings complained of as authorizes this court to consider the exceptions taken. Upon the trial, the accused offered to prove by a witness, that one Stewart had made a statement to him to the effect that he, Stewart, had a double-barrel gun; but it does not appear how, and in what manner, that testimony was relevant to the issue being tried. The mere fact that Burns appeared to have been shot with a gun out of which buckshot had been discharged, would not of itself authorize the admission of statements by third persons that he owned such a gun. Indeed statements by such a third person to the effect that he, and not Lowry, was the actual perpertrator of the offense, would not have been admissible in favor of Lowry upon his trial. *Lyon* v. *The State,* 22 *Ga.* 399; *Daniel* v. *The State,*

65 Ga. 199; *Kelly v. The State*, 82 Ga. 441, 444; Smith *v.* The State, 9 Ala. 990. So that in no view of the case were such declarations admissible, and the court did not err in excluding evidence. The charge of the court which comes to us certified in the record was a full and fair instruction to the jury upon the various phases of the case as they were developed at the trial. The evidence amply sustains the verdict of the jury.

It appears that the accused and the deceased were engaged in the business of trapping and fishing, and lived in a small "shack" near the Altamaha River. A short while before the killing, accused stated to a witness that Burns was a very fussy man; that they had had a few words; that Burns would go into the shanty of the accused and eat his rations, and when he said anything to him about it, Burns would curse; that he, the accused, did not want to have any fuss with anybody, but that if Burns did not stop it, the accused was going to put a bullet in him. On the night preceding the death of Burns, he appeared at the house of a witness across the river, about three fourths of a mile from the "shack" occupied by him and the accused, showed certain wounds he had received, and from which he appeared to have been suffering greatly, and told this witness, that the accused had shot him with his (Burns') gun, and that he had seen accused as he shot him from behind a tree. Burns died the next morning. Before he died and while he was conscious of his dying condition, he stated to the attending physician, when asked as to the cause of his death, that the accused had shot him. Two other witnesses testified, that a day or two after the death of Burns, the accused told them that he had shot Burns. There was further testimony as to the character of the wound of which Burns died, which appeared to have been inflicted by buckshot and shot of a smaller size, and that the accused had recently theretofore bought such ammunition. The only question in the case was as to who fired the fatal shot. The

dying declarations of Burns as to the time and place of the homicide were sufficient corroboration of the confessions made by the accused to sustain a verdict of guilty.

We have carefully examined the evidence, and carefully looked through the record to ascertain, even independently of the inaccurately stated assignments of error, whether there was sufficient evidence to justify the conviction, and whether the defendant has been legally convicted. His case was fairly submitted to a jury. The jury has pronounced him guilty. The trial judge has approved the verdict, and this court will not control his discretion in refusing a new trial.

*Judgment affirmed. All the Justices concurring.*